STATE of Missouri, Respondent,

v.

Lawrence FRIEND, Appellant.

No. 67671.

Supreme Court of Missouri,
En Banc.

June 17, 1986.

Mary L. Dilks, Daniel T. Moore, L. Joe Scott, Poplar Bluff, for appellant.

William L. Webster, Atty. Gen., Stephen Hawke, Mark A. Richardson, Asst. Attys. Gen., Jefferson City, for respondent.

BILLINGS, Judge.

Defendant Lawrence Friend was convicted of felony possession of marijuana under Section 195.200.1(1)(b), RSMo 1978. He challenges the trial court's denial of his motion to suppress evidence and the constitutionality of Section 67.315, RSMo Cum. Supp.1984. We ordered the case transferred to this Court prior to opinion by the court of appeals because of the constitutional issue involved. Mo. Const. art. V, § 10. We affirm.

During the afternoon of December 31, 1983, Sheriff Herman Pierce received a telephone call from Joe McFarland, a store owner in Gainesville. McFarland said defendant Lawrence Friend, was on the street in front of his store, was drunk, and creating a scene. McFarland requested that the sheriff's office send somebody over to check on defendant.

McFarland testified that defendant was hollering, wobbling as he walked, and drinking out of a bottle. A companion of defendant was trying to get defendant to quiet down, but to no avail.

Sheriff Pierce and the city marshal found defendant on the street, seeking to evade them. Sheriff Pierce concluded defendant was intoxicated after observing that defendant was red-eyed, flushed, staggering and smelled of alcohol. He was also carrying a cup of whiskey, which he tried to hide in his coat. Because of defendant's condition, the sheriff decided to hold him in jail for twelve hours for detoxification and safekeeping, as authorized under Section 67.315, RSMo Cum.Supp.1984.[1]

---

1. Section 67.315 is a civil statute which provides:

   **Intoxicated persons, how handled—officer granted immunity from legal action, when**

1. A person who appears to be incapacitated or intoxicated may be taken by a peace officer to the person's residence, to any available treatment service, or to any other appro-

The two officers walked defendant to the office, where the sheriff poured the defendant's whiskey down the sink. Defendant then asked to go to the bathroom. Sheriff Pierce told him that he had to be searched first. The sheriff testified that a search was standard procedure before allowing any detainee to use the bathroom or enter a jail cell. This procedure was to permit the sheriff to remove any weapons or money that he did not want going back into the jail. As the sheriff was searching defendant, but before reaching the pocket area, defendant reached into his own pocket and pulled out a small plastic bag. He tried to slip this bag to the city marshal, then threw the bag into the corner. After determining that the bag contained marijuana, the sheriff arrested defendant for marijuana possession.

Defendant was charged with the crime of felony possession of marijuana as a second offender. Defendant filed pre-trial motions to suppress evidence and to challenge the constitutionality of Section 67.315. Following a hearing the motions were overruled. Defendant was convicted by a jury and sentenced to one year in the county jail and a fine of $1,000.

Defendant's first contention on appeal is that the trial court erred in denying his motion to suppress the marijuana discarded by defendant during the inventory conducted when he was taken into custody for detoxification. Defendant alleges the evidence was seized in violation of his right to be free of unreasonable searches and seizures under Amendments IV and XIV of the United States Constitution and Article I, § 15 of the Missouri Constitution.

Initially, we note that defendant was brought to the Ozark County Jail for detoxification and safekeeping; he had not been placed under arrest at the time his possessions were being inventoried at the jail.

■ At the station house, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed. *Illinois v. LaFayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). The inventory search of an arrested individual and his effects does not violate the Fourth Amendment. *Id.*

There are a number of governmental interests that support the inventory process. These grounds include the need to safeguard the facility by preventing the introduction therein of objects which could be used to harm other prisoners or the detainee himself; protection of the police from danger; protection of detainee's property while it remains in police custody; protection of police against false claims and disputes over lost or stolen property; and to ascertain or verify the identity of the person being incarcerated. *See Illinois v. LaFayette, supra; South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); LaFave, *Search and Seizure, A Treatise of the Fourth Amendment,* § 5.3.

■ The issue in this case is whether the police may apply the same inventory procedures when a person is being civilly detained as when one is arrested and detained. We find no substantial basis for holding that the reasons for a police inventory outlined by the United States Supreme Court in *LaFayette* and *Opperman* do not apply to property taken under police protection when the owner is civilly detained under police custody but not arrested. The policy considerations which justify routine jail house searches are equally applicable when a person is brought into the jail for detoxification. Inventory searches have

---

priate local facility, which may if necessary include a jail, for custody not to exceed twelve hours.

2. Any officer detaining such person shall be immune from prosecution for false arrest and shall not be responsible in damages for taking action pursuant to subsection 1 above if the officer has reasonable grounds to be-

lieve the person is incapacitated or intoxicated by alcohol and he does not use unreasonable excessive force to detain such person.

3. Such immunity from prosecution includes the taking of reasonable action to protect himself or herself from harm by the intoxicated or incapacitated person.

been upheld not because of their relationship to an arrest, but because of their relationship to legitimate custodial purposes. These legitimate custodial purposes are equally present no matter what the characterization of the person being placed in jail. Under Fourth Amendment analysis, the inventory in this case was reasonable. *See also,* for similar holdings, *State v. Toto,* 465 A.2d 894 (N.H.1983); *State v. Gelvin,* 318 N.W.2d 302 (N.D.1982); *United States v. Gallop,* 606 F.2d 836 (9th Cir.1979).

■■■ Defendant also contends that the search was not an inventory search but was a "pretext" search conducted to discover evidence of a crime. Although Sheriff Pierce testified that he thought defendant was a "suspicious" character because he was a known marijuana user, this did not mean that he could not inventory defendant's possessions prior to placing him in jail for detoxification. There is substantial evidence indicating that defendant was intoxicated. Under the circumstances, the sheriff was also justified in concluding that defendant should be taken to jail for detoxification. Defendant's home was twenty miles away and there is no evidence indicating that a local treatment service was available in Gainesville where defendant could be taken. There is also ample evidence indicating that the inventory search of defendant and his possessions was conducted pursuant to standard jail house procedures. The mere suspicion that contraband and or evidence will be found will not invalidate an otherwise valid inventory search conducted pursuant to standard jail house procedure. *See State v. Gelvin, supra.* We find no constitutional violations justifying suppression of evidence.

Defendant next contends that § 67.315 is unconstitutionally vague as applied to defendant. The pertinent part of the statute provides that:

1. A person who appears to be incapacitated or intoxicated may be taken by a peace officer to the person's residence, to any available treatment service, or to any other appropriate local facility, which may if necessary include a jail, for custody not to exceed twelve hours.

Defendant asserts that the statute authorizes several methods of handling an intoxicated person without providing guidelines to determine which alternative to use, thus authorizing arbitrary decisions by police officers as to where to take an intoxicated person.

Vagueness, as a due process violation, offends two important values. One is that notice and fair warning require that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Additionally, the vagueness doctrine assures that guidance, through explicit standards, will be afforded to those who must apply the statute, avoiding possible arbitrary and discriminatory application. *Id.; State v. Brown,* 660 S.W.2d 694 (Mo. banc 1983).

A statute is presumed constitutional and will not be declared unconstitutional unless it clearly and undoubtedly violates some constitutional provision. *State v. Brown, supra.* The burden of establishing its unconstitutionality rests upon the party questioning it. *State v. Hampton,* 653 S.W.2d 191 (Mo. banc 1983).

■■ Here, Section 67.315 conveys with sufficient definiteness what conduct will result in a person being taken into protective custody and outlines with sufficient certainty what the peace officer may do with an incapacitated or intoxicated person. If the words or terms used in the statute are of common usage and are understandable by persons of ordinary intelligence they satisfy the constitutional requirements as to definiteness and certainty. *Prokopf v. Whaley,* 592 S.W.2d 819 (Mo. banc 1980). The statute clearly outlines that a peace officer must have reasonable grounds to believe the person is intoxicated and may not keep him in custody for more than twelve hours. The statute provides sufficient direction and guidance for the officers who apply it. A peace officer may take a

person to one of three places: his home, an available treatment center or any other appropriate local facility, which includes a jail. In this case the sheriff saw defendant drunk and knew that his home was twenty miles away. There was no evidence of any available treatment service or any other appropriate facility besides the jail. The jail was the most convenient and the necessary place under the circumstances to take defendant to that day. There was no arbitrary or discriminatory application of Section 67.315 in this case.

 This interpretation is supported by an analysis of the legislature's intent in enacting Section 67.315. The first rule of statutory construction is to give effect to the intent of the legislature. *State v. Hampton, supra.* The General Assembly eliminated the crime of public intoxication in Section 67.305, RSMo Cum.Supp.1984. Section 67.315 was enacted in order to protect the intoxicated individual and the public as part of the state's public safety provisions. The legislature has the power to provide some method of dealing with publicly intoxicated persons who may be a danger to themselves or others. The intent of the legislature was benevolent in seeking to protect society and individuals. The statute was not created as a subterfuge to allow police to take persons into custody and search them. The legislature felt the police needed some discretion to decide where to take an intoxicated person, allowing consideration of all the surrounding circumstances. This decision-making power hardly makes the statute unconstitutionally vague.

We hold that Section 67.315 passes constitutional muster.

The judgment is affirmed.

HIGGINS, C.J., BLACKMAR, DONNELLY, WELLIVER and RENDLEN, JJ., and SHANGLER, Special Judge, concur.

ROBERTSON, J., not sitting.