**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Elton JACKSON, Defendant–Appellant.**

No. 53240.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 13, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 11, 1989.

Application to Transfer Denied
Feb. 14, 1989.

Henry B. Robertson, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Judge.

The charge in this case was burglary in the second degree. Section 558.011.1(3) RSMo 1986. The sentence after jury trial was six years for a prior and persistent offender. The sole issue on appeal is a *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) challenge to the jury. The issue was preserved at trial and developed after we remanded for a full hearing with express findings of fact. *State v. Jackson*, 746 S.W.2d 429 (Mo.App. 1988).

The substantive facts proven by the state's evidence are defendant was seen at 11:35 p.m. by a home owner. He was seen peering into her bedroom window. Shortly thereafter, she saw defendant at a sliding glass door which allowed entry into the living room. She heard a rattling noise, saw him enter into her living room through the door, and saw him immediately withdraw. The door was found off-track and open wide enough for entry by defendant. Two policemen appeared in answer to a call. The victim signaled the officers that the man was hiding in a stairway next to the open door. She never lost sight of defendant. He was arrested at the scene.

The *Batson* issue facts follow. Defendant is a black male. The venire panel of thirty-six, consisted of twenty whites and sixteen blacks. The state used its six peremptory strikes to remove six black venirepersons. At trial, on April 8 and 9, 1987, defendant made a *Batson* motion. The court denied a motion to quash the jury panel. The jury that heard and decided the case consisted of nine whites and three blacks.

We decide a *Batson* issue developed after the remand order. On remand, the trial court held an evidentiary hearing and fully complied with the remand order by making detailed findings. The court ruled that defendant did not make a prima facie case of purposeful racial discrimination. It also listened to the prosecutor's explanations

for using all peremptory challenges against black venirepersons. It found state's explanations credible, and supported the strikes for reasons that were case specific and not based on race discrimination.

The point relied on by defendant is that the trial court erred in denying defendant's motion to quash the jury panel "because appellant was denied equal protection of the laws in that the state used all six of its peremptory strikes to remove black veniremen from the regular jury panel and the prosecutor's ostensibly neutral reasons for his discriminatory pattern are refuted by the record...." The prosecutor's reasons were government employment, lack of responsiveness, negative demeanor, and friendship or relationship with a convicted felon. The explanations and the findings of the court regarding the explanations involved the six blacks stricken by the state: Lee, Harris, Moore, Collins, Young and Anderson.

We review the findings of no prima facie case and the express findings regarding each black venireperson the state challenged by the standard adopted by the Missouri Supreme Court in *State v. Antwine*, 743 S.W.2d 51, 66 (Mo. banc 1987). We affirm unless the finding of the trial court is clearly erroneous. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We affirm if the trial court's account of the evidence is plausible in light of the record viewed in its entirety. *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

A defendant "... may establish a prima facie case of discrimination by showing that (1) defendant is a member of a cognizable racial group, (2) the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire, and, (3) 'these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.'" *Antwine*, 743 S.W.2d at 64. The defendant is black and the state used all six peremptory challenges to remove black venirepersons. Element numbers (1) and (2) are not in ques-

tion. The findings of the trial court merge element number (3) with a consideration of neutral explanations offered by the state to rebut a presumption of discrimination which arises by proof of a prima facie case of discrimination.

We conclude that the neutral explanations accepted and found by the trial court were sufficient to rebut any presumption of discrimination, and are not clearly erroneous. Susceptibility, possibility of advantage, and evaluation compose the three-pronged analysis required of a trial court in ruling a *Batson* challenge. *Antwine*, 743 S.W.2d at 65.

First, the record does not clearly establish that the crime charged and the trial on the charge were susceptible to racial discrimination. The race of the victim in this burglary charge is of little meaning where the defendant was apprehended at the scene by two police officers summoned by the victim and a neighbor, both of whom were eye-witnesses to the commission of the crime. The witnesses saw the charged acts and never lost sight of defendant. Nor was credibility of state's witnesses a serious issue. The only defense consisted of the testimony of two police officers who testified that no fingerprints of the defendant were found on the glass doors. It is uncertain that the state secured any advantage in striking blacks from the jury to try this case.

Second, the court found the prosecutor's demeanor was even-handed regarding both blacks and whites on the venire panel with emphasis on an attempt to develop a rapport with each venireperson. It is case specific that lack of interest or negative demeanor were a credible and rational part of the explanation for strikes.

Finally, the trial court evaluated the explanations given for each strike and did so by a reasonable objective criteria. The details of that evaluation follow.

The state peremptorily struck black government employees Lee, Harris, and Moore while permitting white government employees to remain. However, the state offered and the court accepted further reasons for these strikes: Lee was more re-

sponsive to questions of defense counsel and had a negative demeanor. The court observed that Lee was a juror in a previous criminal prosecution that terminated without verdict.

The court personally recalled that venireperson Harris, an employee of the City of St. Louis, had a problem with the presumption of innocence. It also found Harris had a negative demeanor and difficulty responding to specific questions which the state thought was an indication of limited intelligence. Venireperson Moore had a close friend, related by marriage, who was in the penitentiary.

Venireperson Collins was stricken for the given reason of lack of attention. He closed his eyes and appeared to doze off during the voir dire. Defendant responds that others appeared to act similarly and that Collins responded to questions asked of him. The explanation and the finding remain supported.

Venireperson Young responded to a question about being a victim of a crime by explaining she once received a traffic ticket. She appeared angry about the experience. She may have misunderstood the question. She may not have understood the difference between victim of arrest and victim of crime. In either event, the explanation is neutral of any racial consideration.

Venireperson Anderson recognized defendant. He was not happy with some prior police investigations. His uncle and a cousin were in jail. Defendant responds that none of these three categories were developed or shown to be negative to the interest of the prosecution. The record does not entirely support or oppose this position. However, the explanations offered by the state are case specific and neutral. Nor does the suggestion of lack of connection require a finding that the explanation is pretextual.

The facts do not suggest an inference that the prosecutor would have an advantage by racial discrimination in the selection of the jury. The charge was burglary in the second degree. A black defendant was tried by a jury of nine white and three black jurors. The verdict directing instruction submitted the issues of knowing entry and intent to steal. The property owner and her neighbor were eye-witnesses to the fact that defendant, at 11:30 p.m., without permission of the property owner, entered an apartment through a sliding glass door and exited through the door. The defendant remained within sight of these witnesses until arrested by the police.

The findings support a ruling that defendant was not denied due process rights by reason of racial discrimination. There was no evidence that removing government employees who were black while permitting white governmental employees to remain on the jury would be discriminatory in the trial of this charge with these facts. Further, other explanations in addition to employment were offered as to these strikes and found supported by the trial court. The findings are clearly erroneous. We affirm.

GRIMM, P.J. and GARY M. GAERTNER, J., concur.